UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
REYNALDO MORGAN,

                        Petitioner,

**MEMORANDUM & ORDER**

     -against-

**10-CV-3954 (NGG) (RER)**

WILLIAM LEE, Warden,

                        Respondent.
-------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

        Petitioner Reynaldo Morgan ("Petitioner" or "Morgan") is currently incarcerated in the Green Haven Correctional Facility. On August 26, 2010, Morgan filed a petition for a writ of habeas corpus ("Petition") with this court. (Pet. (Dkt. 1).) On October 26, 2011, the court referred the Petition to Magistrate Judge Ramon E. Reyes, Jr. (Oct. 26, 2011, Order (Dkt. 10).) On August 8, 2012, Judge Reyes issued a Report and Recommendation ("R&R") finding that: (1) there was no need to expand the record; (2) there was no need to hold a hearing; and (3) the Petition should be denied in its entirety. (R&R (Dkt. 16).) Morgan filed objections to the R&R on October 15, 2012. (Obj. to R&R (Dkt. 22).) On March 25, 2013, Morgan filed a motion to stay the Petition so that he could exhaust an additional claim in state court. (Not. of Mot. to Stay Pet. (Dkt. 24).) The State did not oppose Morgan's motion to stay. (See June 4, 2013, Ltr. (Dkt. 26).) On September 9, 2013, Petitioner again requested a stay. (Mot. to Stay (Dkt. 27).) The court granted the request. (Sept. 23, 2013, Order (Dkt. 28).) On August 22, 2014, Morgan alerted the court that he believed that he had exhausted his state law claim and sought leave to file an amended petition. (Mot. for Leave to File Am. Pet. (Dkt. 31).) The State opposed the proposed amendment. (Nov. 6, 2014, Ltr. Opposing Mot. to Am. Pet. (Dkt. 33).) Now before the court are Morgan's objections to the R&R and Morgan's motion for leave to amend the

1

Petition. For the reasons stated below, the court: (1) lifts the stay; (2) ADOPTS the R&R in full and, accordingly, DISMISSES the original Petition; and (3) GRANTS Morgan's motion for leave to amend.

## I. LEGAL STANDARDS

### A. Stay of Habeas Proceedings

When confronted with a mixed habeas petition—that is, a petition that includes both exhausted and unexhausted claims—a district court may stay adjudication of the petition to allow the petitioner to exhaust her remaining claims. Rhines v. Weber, 544 U.S. 269, 279 (2005) ("The Court of Appeals erred to the extent it concluded that stay and abeyance is always impermissible."). Once the petitioner exhausts her state court remedies, the stay should be lifted and the court should review all of the claims. Walker v. Martin, 562 U.S. 307, 314 n.3 (2011).

### B. Review of a Report and Recommendation

In reviewing a magistrate judge's R&R, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The court must make "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. To obtain this de novo review, an objecting party "must point out the specific portions of the report and recommendation to which [that party] object[s]." U.S. Flour Corp. v. Certified Bakery, Inc., No. 10-CV-2522 (JS), 2012 WL 728227, at *2 (E.D.N.Y. Mar. 6, 2012); see also Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the [R&R]."). If a party "makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008); see also Mario v. P&C Food Mkts., Inc., 313

F.3d 758, 766 (2d Cir. 2002). Portions of an R&R to which a party makes no objection are also reviewed for clear error. U.S. Flour, 2012 WL 728227, at *2.

Where a pro se party objects to an R&R, "the court reads his objections 'liberally and will interpret them to raise the strongest arguments that they suggest.'" Velasquez v. Metro Fuel Oil Corp., 12 F. Supp. 3d 387, 398 (E.D.N.Y. 2014) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). However, a court "need not argue a pro se litigant's case nor create a case for the pro se which does not exist." Molina v. New York, 956 F. Supp. 257, 259 (E.D.N.Y. 1995).

Under this standard, the court finds that Petitioner has put forward specific objections to the R&R, and therefore performs a de novo review of these objections. With respect to any portions of the R&R that were not objected to, the court reviews for clear error, and finds none.

### C. Motion for Leave to Amend

In the habeas context, "the standard for granting or denying a motion to amend is . . . governed by Federal Rule of Civil Procedure 15(a)." Littlejohn v. Artuz, 271 F.3d 360, 363 (2d Cir. 2001) (per curium). "[A]lthough Rule 15 requires that leave to amend be 'freely given,' district courts nonetheless retain the discretion to deny that leave in order to thwart tactics that are dilatory, unfairly prejudicial or otherwise abusive." Id. (quoting Fed. R. Civ. P. 15(a)). Accordingly, a district court may deny a motion to amend where the amendment would be futile. Ching v. United States, 298 F.3d 174, 180 (2d Cir. 2002) (Sotomayor, J.). "Futility of a proposed amendment is established where 'the proposed claim could not withstand a motion to dismiss' for failure to state a claim upon which relief may be granted". Ortiz v. Heath, No. 10-CV-1492 (KAM), 2011 WL 1331509, at *5 (E.D.N.Y. Apr. 6, 2011) (quoting Lucente v. Int'l Bus. Machs. Corp., 310 F. 3d 243, 258 (2d Cir. 2002)).

## II. DISCUSSION

### A. Lifting the Stay

Morgan informed the court on August 22, 2014, that his previously unexhausted claim was exhausted when the Appellate Division, Second Department denied his application for leave to appeal the New York Supreme Court's denial of his motion to vacate judgment of conviction. (See Pet'r's Decl. (Dkt. 31-1) ¶ 6.) See also N.Y. Crim. Proc. Law § 450.15 (authorizing an appeal from "an order denying a motion, made pursuant to section 440.10" only if the defendant receives a "certificate granting leave to appeal"). Because all of Morgan's claims have now been exhausted, the court lifts the stay. See Walker v. Martin, 562 U.S. 307, 314 n.3 (2011).[1]

### B. Review of the R&R

#### 1. Judge Reyes's R&R

The court assumes familiarity with the detailed factual and procedural history contained in Judge Reyes's R&R. (See R&R at 1-7.)

In brief, Morgan's Petition stems his state court convictions after two separate jury trials. (See id. at 7-8.) At Morgan's first jury trial, he was convicted of murder in the second degree, attempted murder in the second degree, assault in the first degree, and criminal possession of a weapon in the second degree, and sentenced to consecutive prison terms of twenty-two years to life for the murder conviction and eight to twenty-four years for the attempted murder conviction, to run concurrently with sentences of five to fifteen years each for the assault and weapon possession convictions. (Id. at 7.) Morgan appealed his conviction to the New York Supreme Court, Appellate Division, Second Department. (Id.) The Second Department vacated the conviction for murder in the second degree due to an improper justification charge. People v.

---

[1] Without formal briefing on the subject, the court declines to make a final determination as to whether Morgan has properly exhausted the claim in his Amended Petition. Should the State believe that Morgan has failed properly to exhaust his claim, it may raise the argument in response to the Amended Petition.

4

Morgan, 737 N.Y.S.2d 108, 109-10 (App. Div. 2002). Accordingly, Petitioner was granted a new trial on the charge of murder in the second degree. Id. at 109.

At the second trial, Petitioner was again found guilty of second degree murder. (R&R at 7.) He was sentenced to a minimum of twenty-two years and a maximum of life imprisonment, to run consecutively with his sentence from the first trial. (Id.)

Morgan appealed his second conviction to the Appellate Division. On appeal, he claimed that his attorney—Michael Harrison—"delivered a rambling and unintelligible opening statement," inadequately cross-examined the prosecution's witnesses, "gave an incoherent closing statement," and "virtually ignored" Petitioner's version of the events in relation to the justification defense. (Id. at 8 (citing Br. for Def.-Appellant ("Morgan Appeal Br.") (Aff. of Morgan J. Dennehy in Opp'n to Pet. For Writ of Habeas Corpus ("Dennehy Aff.") (Dkt. 8) Ex. A. (Dkt. 8-1)) at 32-33).)

The Appellate Division affirmed the conviction, finding that Morgan had not been denied effective assistance of trial counsel. People v. Morgan, 881 N.Y.S.2d 898, 899 (App. Div. 2009). The New York Court of Appeals denied Petitioner permission to appeal further. People v. Morgan, 914 N.E.2d 1019 (N.Y. 2009). Petitioner did not file a petition for certiorari to the United States Supreme Court or any further appeals. (R&R at 8.)

In the R&R, Judge Reyes reached the following conclusions. First, he found that the evidentiary record did not need to be expanded to include an affidavit from Morgan's mother because the affidavit would not entitle Morgan to relief even if it were considered. (Id. at 9-10.) Second, Judge Reyes found that an evidentiary hearing was not required because Petitioner's ineffective assistance of counsel claim was fully developed in the state court proceedings and in

the existing record. (Id. at 10-11.) Finally, Judge Reyes found that Morgan did not receive the ineffective assistance of counsel during his trial. (Id. at 13-23.)

2. Petitioner's Objections

In his Objection, Petitioner raises six grounds in support of his claim that he received ineffective assistance of counsel. First, Petitioner argues that the New York ineffective assistance of counsel standard is contrary to Strickland v. Washington, 466 U.S. 668 (1984). (Obj. to R&R at 3-6.) Second, Morgan argues that Judge Reyes erred by not holding an evidentiary hearing allowing for Harrison to be confronted with regard to his trial strategy. (Id. at 6). Third, Morgan argues that the R&R incorrectly found that Harrison was entitled to pursue inconsistent defenses without his consent and that doing so constituted ineffective assistance of counsel. (Id. at 8-12.) Fourth, Morgan argues that Harrison's opening statement was deficient. (Id. at 10-11.) Fifth, Petitioner contends that Harrison's cross-examination was deficient. (Id. at 12-13.) Sixth, Morgan argues that the R&R incorrectly concluded that the closing was not deficient.[2] (Id. at 13-14.)

3. Habeas and Ineffective Assistance of Counsel

The New York courts resolved Morgan's ineffective assistance of counsel claims on the merits. See People v. Morgan, 737 N.Y.S.2d 108, (App. Div. 2002); see also Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001) ("For the purposes of AEDPA deference, a state

---

[2] Throughout his Objection, Petitioner urges the court to follow Usher v. Ercole, 710 F. Supp. 2d 287 (E.D.N.Y. 2010). Other than involving the same defense counsel and being issued by this court, there are few similarities between the claims at issue in Usher and Morgan's claims. In Usher, this court found that defense counsel was constitutionally defective because (1) he failed to consult with a medical expert, preventing him from "mounting any sort of attack on the only direct evidence of sexual abuse," id. at 305; (2) defense counsel entered into evidence "highly damaging" medical records without any meaningful justification, id. at 309; and (3) defense counsel failed to object to "hugely prejudicial" hearsay testimony, id. at 311. Here, however, Petitioner does not argue that defense counsel failed to pursue highly probative and potentially exculpatory evidence. Likewise, Petitioner does not argue that defense counsel injected the case with harmful evidence without justification. Instead, in this case, Morgan critiques the strategy defense counsel chose to pursue at trial. Usher simply does not control the outcome here.

court 'adjudicate[s]' a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." Therefore, Petitioner is only entitled to relief if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1).

"A decision is contrary to clearly established Federal law if it 'contradicts the governing law' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from' the Supreme Court." Yung v. Walker, 341 F.3d 104, 109 (2d Cir. 2003) (alteration in original) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)). "An unreasonable application of federal law is more than an incorrect application, but the petitioner need not show that all reasonable jurists would agree that a state court determination is incorrect in order for it to be unreasonable." Id. Instead, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Swaby v. New York, --- F. App'x ---, No. 14-1582, 2015 WL 3479633, at *1 (2d Cir. June 3, 2015) (summary order) (quoting Harrington v. Richter, 562 U.S. 86, 101 (2011)).

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. "In assessing a claim that a lawyer's representation did not meet the constitutional minimum, [courts] 'indulge a strong presumption that counsel's conduct f[ell] within the wide range of professional assistance.' To overcome that presumption, a petitioner must establish both parts of the familiar Strickland test, showing, first, that his attorney's performance 'fell below an objective standard of reasonableness', and, second, that there was prejudice, meaning a 'reasonable probability' that,

but for counsel's error, the outcome would have been different." Lynch v. Dolce, 789 F.3d 303, 311 (2d Cir. 2015) (quoting Strickland, 466 U.S. at 688-94) (internal citations omitted). "Where the habeas claim is ineffective assistance of counsel, the standard for evaluating the state court's rejection of the claim is 'doubly' deferential, for '[e]ven under de novo review, the standard for judging counsel's representation is a most deferential one.'" Swaby, 2015 WL 3479633, at *1 (quoting Richter, 562 U.S. at 105). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 562 U.S. at 105.

    4. Discussion of Petitioner's Specific Objections

    *a. New York and Federal Ineffective Assistance Standards*

Habeas may be granted where the state court decision was "contrary to . . . clearly established federal law." 28 U.S.C. § 2254(d)(1). Morgan argues that because the New York courts, in deciding his appeal, applied the New York standard for determining ineffective assistance of counsel, and the New York standard is different from the federal standard, the state court adjudication was contrary to federal law. (Obj. to R&R at 3-6.) As a preliminary matter, and as noted by Judge Reyes (See R&R at 13 n.10), Morgan did not raise this argument in his Petition; instead he raised it only on reply. "The Court need not consider a new argument raised for the first time in a reply brief, as arguments presented in this fashion deny the opposing party a fair opportunity to respond." U.S. Underwriters Ins. Co. v. Falcon Constr. Corp., No. 02-CV-4182 (CSH), 2006 WL 3146422, at *3 (S.D.N.Y. Oct. 30, 2006).

However, even taking Morgan's argument on its terms the court finds that it lacks merit. "[T]he standard for ineffective assistance of counsel under the New York Constitution differs

8

from the standard under the Federal Constitution in one critical way. Under the federal standard, a criminal defendant must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, whereas under the New York standard, a criminal defendant need show only that counsel's error affected the fairness of the process as a whole." Cummings v. LaValley, 582 F. App'x 49, 50 (2d Cir. 2014) (summary order) (internal quotations and citation marks omitted).

Accordingly, the Second Circuit has "recognized that the New York 'meaningful representation' standard is not contrary to the Strickland standard." Rosario v. Ercole, 601 F.3d 118, 124 (2d Cir. 2010) (citing Eze v. Senkowski, 321 F.3d 110, 123-24 (2d Cir. 2003); Lindstadt v. Keane, 239 F.3d 191, 198 (2d Cir. 2001)). Indeed, "[t]he New York standard is understood to subsume the federal standard because it is considered more protective of criminal defendants." Cummings, 582 F. App'x at 50. Thus, "'[t]he only avenue of reprieve available to [Morgan] then is to establish that the state court unreasonably applied Strickland.'" Cornell v. Kirkpatrick, 665 F.3d 369, 382 n.11 (2d Cir. 2011) (quoting Rosario, 601 F.3d at 126).

Morgan correctly notes that Rosario cautioned that "some [New York state] courts might misunderstand the New York standard and look past a prejudicial error as long as counsel conducted himself in a way that bespoke of general competency throughout the trial." Rosario, 601 F.3d at 126. Merely referring to state law alone, however, does not indicate that a state court has misapplied federal law. Cummings, 582 F. App'x at 50. There is no indication from the record that the Appellate Division made the error described in Rosario. See People v. Morgan, 881 N.Y.S.2d at 898-99. Accordingly, Petitioner cannot demonstrate that his state court adjudication was contrary to federal law.

Even assuming that it was necessary to examine de novo Petitioner's ineffectiveness claim directly under Strickland, the court finds, as explained below, that Morgan's claim does not warrant relief. See Brownridge v. Miller, No. 06-CV-6777 (RJD) (SMG), 2010 WL 2834829, at *5 (E.D.N.Y. July 15, 2010) (approving such a procedure).

### b. *Failure to Hold a Hearing*

Morgan argues that the R&R is flawed because Judge Reyes found that there was no need for an evidentiary hearing concerning Morgan's ineffective assistance claim. (Obj. to R&R at 6-7.) In support of this premise, Petitioner contends that "this circuit requires the district court to confront the challenged counsel via affidavit, or undergo the crucible of cross-examination on his attack of strategy." (Id. at 6.) The court disagrees and finds that an evidentiary hearing is unnecessary.

First, there was no need to hold an evidentiary hearing because "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011); see also Jackson v. Conway, 763 F.3d 115, 132 (2d Cir. 2014) ("[W]hen conducting its review under § 2254(d), the federal court is generally confined to the record before the state court that adjudicated the claim.") As explained above, Morgan's ineffective assistance claim was resolved by the New York courts on the merits. Accordingly, a habeas court was not entitled to review new evidence of ineffectiveness and an evidentiary hearing was therefore not required.

Moreover, even if the habeas court were permitted to rely on new evidence adduced at a hearing, "[a] district court may not hold an evidentiary hearing on a claim for which a petitioner failed to develop a factual basis in state court unless the petitioner shows that: (1) the claim relies either on (a) a new rule of constitutional law that the Supreme Court has made retroactive to

10

cases on collateral review, or (b) a factual predicate that could not have been previously discovered through the exercise of due diligence, and (2) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact finder would have found the petitioner guilty of the underlying offense. West v. Uhler, No. 12-CV-1611 (JKS), 2014 WL 3895235, at *7 (N.D.N.Y. Aug. 8, 2014) (citing 28 U.S.C. § 2254(e)(2)). Even where the predicates outlined in §2254(e)(2) are established, "[a] district court has broad discretion to hear further evidence in habeas cases." Nieblas v. Smith, 204 F.3d 29, 31 (2d Cir. 1999) (citing Townsend v. Sain, 372 U.S. 293, 318 (1963)).

Here, Morgan cannot satisfy the requirements of § 2254(e)(2). First, Strickland is not a new rule of constitutional law made retroactively applicable. Second, Morgan has not explained why he was incapable of developing a sufficient factual record regarding his ineffective assistance claim during his direct state court appeals.

Finally, even if the court were permitted to order an evidentiary hearing, it would not do so. Judge Reyes correctly found (See R&R at 10-11), that the record, which includes the trial transcript from Petitioner's trial, is sufficient to decide Petitioner's claim. Accordingly, the court agrees that an evidentiary hearing is not required.[3]

### c. *Inconsistent Defense Theories*

Morgan objects to Judge Reyes's determination that it was not ineffective assistance of counsel for Harrison to rely on inconsistent strategies. (Obj. to R&R at 8.) As Judge Reyes correctly noted, defense counsel is permitted to raise inconsistent defenses. (R&R at 21 (citing Mathews v. United States, 485 U.S. 58, 64 (1988)). In response, Morgan argues that the R&R "failed to extend the principle in Mathews to a new context where is should apply." (Obj. to

---

[3] At this time, the court does not decide whether an evidentiary hearing is needed concerning Petitioner's newly exhausted claim.

11

R&R at 9.) Petitioner misunderstands the role of a habeas court. This court may grant Morgan relief if his state court adjudication was "was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). By conceding that he is seeking an expansion of Mathews, Morgan gives up the game; the Appellate Division's determination that the pursuit of inconsistent theories was not ineffective assistance of counsel could not be an unreasonable application of clearly established law if Morgan is seeking an expansion of federal law.

In any event, the court agrees with Judge Reyes that it was not ineffective assistance of counsel for Harrison to pursue inconsistent defense theories in this case. Petitioner objects to Harrison's decision to advance several theories inconsistent with Petitioner's statement to the police; for example, Harrison argued that there may have been a drive-by shooting. (R&R at 21.) Specifically, Morgan argues that there was so little evidence supporting a drive-by shooting that "it boarded [sic] on the absurd to pursue it." (Obj. to R&R at 10.) Instead, Petitioner argues that Harrison should have focused only on his claim that the shooting of Ford was accidental. (Id.) The court disagrees.

"We begin, as we always begin, with the presumption that counsel was effective." Greiner v. Wells, 417 F.3d 305, 320 (2d Cir. 2005). "Actions or omissions by counsel that 'might be considered sound trial strategy' do not constitute ineffective assistance." Henry v. Poole, 409 F.3d 48, 63 (2d Cir. 2005) (quoting Strickland, 466 U.S. at 690). As Judge Reyes noted, numerous strategic choices could have supported Harrison's decision to pursue inconsistent defenses; most notably, by pursuing alternative theories of the shooting, Harrison avoided Morgan's admission that he had shot Palacio and Ford and his unbelievable explanations for doing so. (R&R at 21.) Moreover, Morgan presented no evidence to the state courts

12

indicating that Harrison's decision to pursue alternative defense was not strategically based. Accordingly, Morgan cannot show that Harrison's choice to pursue inconsistent defense theories constituted ineffective assistance of counsel.

Moreover, Morgan cannot establish prejudice. To establish prejudice, "'[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Knowles v. Mirzayance, 556 U.S. 111, 127 (2009) (quoting Strickland, 466 U.S. at 691). Morgan argues that Harrison should have focused more on his allegation that the shooting was accidental. (Obj. to R&R at 9-10.) However, Harrison did argue that Morgan accidentally shot Ford (See R&R at 15-16), and the jury rejected the argument. It is unclear what, precisely, Morgan wanted Harrison to add in support of his accidental shooting theory, but in light of the overwhelming evidence against Morgan (see, e.g., id. at 6 (trial testimony indicating that it was implausible that the gun was accidentally fired); id. at 23 (finding no prejudice)), the court cannot find that Morgan was prejudiced by any purported failings of Harrison.

*d. Harrison's Opening Statement*

Morgan faults Harrison for not properly advancing his justification defense in his opening statement by alleging that Harrison suggested—incorrectly—that there had been a struggle with Ford, not Christopher. (Obj. to R&R at 10.) The court agrees with Judge Reyes, who noted that this characterization misrepresents the opening; Harrison suggested that there had been a struggle for the gun and that Ford was killed in the struggle. (R&R at 10.) Given that Morgan's prior statements specifically referred to a struggle with Christopher, there was no reason for Harrison

13

to mention the specific identity of the individual Morgan struggled with in his opening. (Id.) Therefore, the court finds that Harrison's opening was not objectively unreasonable.

In any event, Morgan has not asserted, nor could he, any plausible prejudice stemming from an alleged minor error during the opening. As explained above, Harrison did present Morgan's accidental shooting theory to the jury, and the jury rejected it. Given the overwhelming evidence contradicting the accidental shooting theory, the court finds that even if Harrison had identified Christopher during the opening, the result would have been unchanged. Furthermore, in light of the prominence of Morgan's written statements to the police (see R&R at 13), it defies credulity to argue that an alleged verbal slip in the opening statement prejudiced Morgan. Accordingly, any errors in the focus of the opening statement were not prejudicial under Strickland.

*e. Harrison's Cross-Examination*

Morgan objects to the R&R's determination that Harrison's cross-examination was not deficient by arguing that although "[t]he Report rifled out several instance [sic] which was [sic] beneficial to Petitioner in support of his defense, but none of which was [sic] consistent with an accidental shooting." (Obj. to R&R at 12.) The court rejects Morgan's argument.

First, as explained above, it was not ineffective assistance of counsel for Harrison to choose to focus the defense on theories other than accidental shooting. Therefore, Harrison's decision to focus on alternative theories on cross-examination was not constitutionally defective.

Second, and more fundamental, Harrison's cross-examinations were not constitutionally ineffective. In order for cross-examination to be constitutionally deficient, a court must find that "'there is no strategic or tactical justification for the course taken.'" Eze v. Senkowski, 321 F.3d 110, 127 (2d Cir. 2003) (quoting United States v. Luciano, 158 F.3d 655, 660

(2d Cir. 1998)). "[D]ecisions whether to engage in cross-examination, and if so to what extent and what manner, are strategic in nature.'" Ramirez v. United States, 898 F. Supp. 2d 659, 666 (S.D.N.Y. 2012) (quoting United States v. Neresian, 824 F.2d 1294, 1321 (2d Cir. 1987)). Judge Reyes found that Harrison had valid purposes in his cross-examination, namely, he was able to elicit useful testimony supporting Morgan's defense, impeach witnesses, and offer alternatives to the State's case. (R&R at 19.) The court agrees; Harrison's cross-examination was not objectively unreasonable. See Bloomfield v. Senkowski, No. 02-CV-6738 (RJD) (LB), 2008 WL 2097423 at *9 (E.D.N.Y. May 15, 2008) (finding that trial counsel's cross-examination was constitutionally sound where trial counsel "vigorously cross examined" three prosecution witnesses); Cruz v. Conway, No. 05-CV-4750 (ARR), 2007 WL 1651855, at *6 (E.D.N.Y. June 6, 2007) (rejecting a claim of ineffective assistance of counsel where trial counsel chose not to focus on lines of questioning that defendant claimed would have been more effective). Therefore, the court finds that Harrison's cross-examinations were not constitutionally defective.

### f. *Harrison's Closing Statement*

Morgan argues that it is "inconceivable to determine Harrison's closing made any sense whatsoever in support of a [sic] accidental shooting." (Obj. to R&R at 14.) The court agrees with Judge Reyes that the closing statement was not constitutionally defective. (See R&R at 19-22.)

Preliminarily, as with Harrison's opening statement and cross-examinations, it was not ineffective assistance of counsel for Harrison to choose to focus on multiple defenses apart from accidental shooting.

More important, Harrison's closing did effectively discuss the accidental shooting theory. Harrison argued that the Petitioner had been set up to be a "fall guy" and that he killed Ford

while defending himself. (Id. at 21.) These statements were the precise accidental shooting theory that Morgan argues should have been articulated. Accordingly, the court finds that Harrison's closing was not constitutionally deficient.

In any event, Morgan suffered no prejudice from any purported error during the closing. As explained above, Harrison did argue Morgan's accidental shooting theory to the jury at closing, and the jury rejected it. Given the overwhelming evidence contradicting the accidental shooting theory, the court finds that any errors in the delivery or focus of the closing were not prejudicial under Strickland.

### C.    Motion for Leave to Amend

Morgan seeks to amend his Petition to state a newly-exhausted ineffective assistance of counsel claim—namely, that he was improperly advised regarding a plea deal. (Mot. for Leave to File Am. Pet.) The State argues that the motion for leave to amend should be denied as futile because Morgan's newly-exhausted claim is procedurally barred (Nov. 5, 2014, Ltr.), as the New York Supreme Court barred Morgan's claim under Criminal Procedure Law § 440.10(2)(c), holding that the new ineffective assistance claim related to Morgan's plea offer was based upon facts contained in the record and could have been raised on direct appeal. (See Nov. 19, 2013, Mem. (Mot. for Leave to File Am. Pet., Ex. A).)

In Fulton v. Graham, --- F.3d ---, No. 14-1861-pr, 2015 WL 5294878 (2d Cir. Sept. 11, 2015), the Second Circuit explained that New York courts routinely conclude that ineffective assistance claims premised on off-the-record conversations fall outside the scope of the § 440.10(2)(c) bar. Id. at *4. Here, Morgan's conversation with counsel regarding his plea at least arguably occurred off the record. (Trial Tr. (Resp. to Order to Show Cause (Dkt. 8), Ex. 2 (Dkt. 8-2)) at 3:19-21 (indicating an off-the-record discussion between Morgan and counsel

regarding the plea offer).) In these circumstances, the Second Circuit has found that it would be an error to rely on the state court's procedural holding to bar a habeas petition. Fulton, 2015 WL 5294878, at *5. Accordingly, the motion for leave to amend is granted.[4]

## III. CONCLUSION

For the foregoing reasons, Morgan's original Petition is DENIED, but Morgan's motion for leave to amend is GRANTED. The court considers the Amended Petition filed in the form attached as an exhibit to Morgan's motion for leave to amend. (See Am. Petition (Dkt. 31-2).) The State is ordered to show cause why a writ of habeas corpus should not be issued by filing a return to the Amended Petition within 60 days of receipt of this Memorandum and Order. The Amended Petition is REFERRED to Judge Reyes for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b).

Because Petitioner has not made a substantial showing of the denial of a constitutional right, no certificate of appealability shall issue. The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this judgment would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
      September 17, 2015

NICHOLAS G. GARAUFIS
United States District Judge

---

[4] Nothing in this Memorandum and Order should be taken to preclude the State from arguing in response to the Amended Petition that the state court's reliance on § 440.10(2)(c) was an adequate and independent state law ground. Indeed, Fulton expressly notes that in some circumstances a state court's application of § 440.10(2)(c) may properly bar habeas review. 2015 WL 5294878, at *4. In addition, at this time, the court does not express a view as to whether the state court adjudicated Morgan's newly-exhausted claim on the merits.